ELECTRIC SUPPLY COMPANY, Appellee, v. R. E. PURSLOW and MARY JANE MILLER, Appellants.    FRANK DONOHUE and J. J. KEEFE, Defendants.

Mechanic's lien: ENFORCEMENT: EVIDENCE.  Evidence held to sustain a judgment against the owner of premises and the establishment of a lien for the cost of the fixtures, in excess of the amount the contractor was obligated to pay, on the ground that the owner authorized the selection thereof with the understanding that if they exceeded the contractor's liability she would be responsible for the excess.

*Appeal from Woodbury District Court.*— HON. JOHN F. OLIVER, Judge.

TUESDAY, JULY 7, 1908.

ACTION to establish and foreclose a mechanic's lien upon a certain hotel property in the city of Sioux City.   The trial court rendered judgment against the owners of the property, and established a lien against the building, dismissing the action as to the original contractor, Keefe, and Donohue, the tenant.   The property owners, Purslow and Miller, appeal.— *Affirmed.*

*Martin Neilan,* for appellants.

*Marks & Marks,* for appellee.

DEEMER, J.— Mary Purslow, now deceased, was the owner of some property in the city of Sioux City upon which she desired to erect a hotel, and in the year 1905 she entered

into a contract with one J. J. Keefe to furnish the labor and material whereby to construct the building according to certain plans and specifications for the agreed price of $73,500. By the terms of this contract the contractor was to furnish all the labor and material, and to build, furnish, and complete the hotel in every particular and detail, according to the plans and specifications.  Provision was made for changes and alterations by the owner with the consent of the architect; but, if they entailed any additional expense, they were to be agreed upon before the changes were begun.  The owner was not to pay for extra work or material, unless ordered by her and her architect in writing.  The specifications stated that they were to include everything necessary to complete the building as shown, although the items were not specifically mentioned.  These specifications also expressly provide that " electric light fixtures to the extent of $500 are included in this contract."  Soon after the contract was entered into, the premises, with the proposed building, were leased to defendant Donohue.  Keefe began work under his contract at once, and some time during the month of December, 1905, the question of electric fixtures for the building came up. Keefe submitted to plaintiff and other houses a list of the fixtures and electrical supplies to be used in the hotel for bids, and plaintiff's bid of $912 was accepted.  Donohue notified both plaintiff and Keefe that this bid was accepted, and that Keefe was to pay $500 of the purchase price and the owner of the building the remainder.  Plaintiff asked Keefe about this arrangement, and he (Keefe) said that it was all right so far as he was concerned, and that plaintiff had better ask the owner about the matter.  Thereupon plaintiff met the agent of the owner, who had the building in charge, and asked him if Donohue's selection of the fixtures for the hotel was all right, to which the agent said, " Certainly."  Plaintiff then put in the fixtures which had been selected, received the $500 from Keefe, and asked the owner for the balance.  His request was refused, on the ground

that Keefe was to furnish these fixtures.   Thereupon this action was brought against the then owners, Mary Purslow having died in the meantime, the contractor, Keefe, and the tenant, Donohue.   The judgment was against the owners of the building alone, and from that they appeal.

They contend that Keefe was bound under his contract to furnish all the fixtures, that neither they nor their ancestor knew that Keefe or Donohue was ordering more fixtures than the specifications called for, that neither Keefe nor Donohue had any authority to order any fixtures costing more than the estimated $500 named in the specifications, and that whatever else was done in this regard was not binding upon them.   These contentions are based upon two propositions, which are strongly insisted upon:   First, that Keefe under his contract was to furnish all the fixtures for the hotel, and to complete the same in full according to the plans and specifications; and, second, that defendants made no contract with plaintiff to supply any fixtures whatever. Going back to the written contract, it will be discovered that, while Keefe was to furnish all the labor and material for the construction of the building according to the plans and specifications, the electric light fixtures were specifically mentioned and Keefe was not bound to put in more than $500 worth thereof.   It does not clearly appear just what sort of electric fixtures were set forth in the specifications; but it is manifest that Keefe's obligation with reference thereto was estimated at $500, and that beyond that amount he was not required to go.   When the matter came up it was discovered that the hotel could not be equipped with proper electric fixtures for $500.   Donohue, the tenant, was informed of this, and, when plaintiff's bid was accepted, the conversations between plaintiff, Donohue, Keefe, and the agent of the owner, to which we have referred, occurred.   There is no doubt that the fixtures put in the building could not be supplied for $500, and it is admitted that Keefe has paid the $500 which was included in his contract.   There is also no doubt that Keefe cannot be held liable for the additional cost of the

fixtures, for he did not make any contract to pay this amount. Donohue, the tenant, did not assume to act for himself, and there is no ground for holding him. The sole question in the case is the liability of the owners for the cost of the fixtures over and above the $500.

It is perfectly manifest that Keefe was not to put in fixtures costing more than $500, and that the exact kind and character of the fixtures was to be determined after the work had progressed to the point where it was necessary to decide the matter. The contract did not require Keefe to put in any certain fixtures, nor was he bound to put in any which cost more than $500. Indeed, it appears that the matter of the character and kind of electric fixtures which were to be put in was to be left to future negotiations. The written contract contains no other limitations, and it is clear that Keefe is not liable beyond the $500 which he has paid. The testimony shows that, when the tenant learned the fixtures could not be put in for the $500, he consulted with the owner's agent, advised him of the situation, and that the agent said: " We will have to have them anyway. Go ahead and get them." Moreover, the evidence makes it appear that Donohue acted as agent for the owner of the building during its entire construction, gave directions and orders with reference thereto, and was treated as agent of the owner for the construction of the hotel. This agent, Donohue, went over the list of fixtures, approved it, and said the owner would pay all over $500 of the cost. Another confessed agent of the owner said that Donohue's selection was all right, thus confirming the tenant's authority to make choice of the fixtures for the hotel. We are satisfied that the owner of the building and her immediate agent authorized the tenant to make the selection of the fixtures, fully understanding that if they amounted to more than the $500 the owner was to be responsible for the overplus. This finding settles the case in the plaintiff's favor, for the law is not seriously in dispute.

The decree seems to be correct, and it is *affirmed*.